## BARNES *vs.* BLAIR.

1. An instrument in the following words: "Received, Mobile, 24th April 1845, of James Barnes, six hundred and fifty dollars for a negro slave, named Joe, about twenty-five years old, sound and healthy, the title to the same I fully guarantee," does not import a warranty of soundness.
2. Where there is an express warranty in one particular, the law will not imply it in another.

Error to the Circuit Court of Mobile. Tried before the Hon. John Bragg.

LOCKWOOD, for plaintiff:

1. The instrument declared on contains a warranty of the soundness and healthiness of the slave, and imports an agreement to that effect. Cramer v. Bradshaw, 10 Johnson, 484; Gilchrist v. Morrow, 2 Car. Law Rep. 607; Ayres v. Parks, 3 Hawks, 59; Houston v. Gilbert, 3 Brevard, 53; 2 J. J. Mar. 129; Chapman v. March, 19 Johns. 290; Cook v. Mosely, 13 Wend. 277; Hastings v. Lovering, 2 Pickering, 214; Hegins v. Plympton, 11 do. 97; 2 Humphey, 305; Gardner v. Gray, 4 Camp. 144; Bridge v. Wain, 1 Stark. 504; Zotes v. Pym 6 Taunt. 446.

CAMPBELL, contra :

The warranty in this case, is confined to the title, and does extend to the condition and health of the slave. No warranty of soundness is implied, and before it can be inferred there must be a clear intention. If it is a matter of doubt, the conclusion would be that the warranty was not intended. The collocation of the words in the bill of sale show, that no warranty was intended. 8 Bingham, 48, (21 Serg. & L.) 217, S. C.; Smith & Norton v. Miller, 2 Bibb, 616 ; Loper v. Breckenridge, 4 Missouri, 14; Thos. Wason v. Elijah Rowe, 16, Ver. 525; Cheves, S. C. Rep. 186 ; Rice Rep. 437; 20 John. 196; 1 Murphey, 138 ; 3 Stew. Rep. 140.

DARGAN, J.—This was an action of assumpsit, for the false warranty of a slave, sold by the defendant to the plaintiff, and which the plaintiff contends was warranted to be sound.

The bill of sale is in the following language : " Received, Mo-
bile 24th April 1845, of James Barnes, six hundred and fifty
dollars for a negro slave named Joe, about 25 years old, sound
and healthy ; the title to the same I fully guarantee." I ad-
mit that there are several decisions to be found, which hold
that this bill of sale should be construed as containing a war-
ranty of soundness. See Cramer v. Bradshaw, 10 Johns. 484;
Gilchrist v. Morrow, Carolina Law Rep. 607; 3 Hawks, 59.
These decisions however rest upon the ground, that the words,
" *sound and healthy,*" constitute an averment of a fact, and
therefore amount to a warranty; but no notice was taken of
the circumstance, that there was an express warranty of title,
immediately succeeding them, which in our opinion is very
material in arriving at the correct intention of the parties, and
which is the true test whether the contract of sale contains a
warranty of soundness or not. The natural impression that
the words used in the bill of sale would seem to convey is,
that the seller represented the slave to be about twenty-five
years old, *sound and healthy*, and that he undertook to warrant
the title only, and we think this is the proper construction to be
given to it. We admit that if the bill of sale had not con-
tained an express warranty of title, that the affirmation made,
that the slave was sound and healthy, would have constituted
a warranty of soundness, but when we see immediately fol-
lowing the words, sound and healthy, an express warranty of
title by the use of the words, " the title to the same I fully
guarantee," we think the intention of the seller was to war-
rant the title alone, and the words, " about twenty-five years
old, sound and healthy" are words of description, and not a
warranty either as to the age or health of the slave. In the
case of Budd v. Fairmaner, 8 Bingham, 48, the bill of sale
was: " Received of Budd, ten pounds for a gray four year
old colt, warranted sound:" the complaint was, that the colt
was only three years old, and the question was whether the
warranty extended to the age of the colt. Chief Justice Tin-
dal said, that where there is an express warranty to a single
point, the law will not imply another; and it was held by all
the judges, that the warranty extended to the soundness alone,
and not to the age of the colt. So in the case of Dickinson
v. Gapp, cited in the opinion of the court last referred to: the

bill of sale was, "Received of D., one hundred pounds for a bay gelding, got by Cheshire Cheese, warranted sound:" the breach alleged was, that Cheshire Cheese was not his sire. It was held that the warranty extended to the soundness of the horse and not to his pedigree. In the case of Smith v. Norton & Miller, 2 Bibb, 616, the bill of sale was almost identical with the one now before us; the court determined, that the warranty extended to the title only, and not to the soundness of the slave. These citations are sufficient to show at least, that there is a want of harmony in the decisions on this subject, and we are therefore left free to construe this instrument, as if the question was *res integra.* The intention of the parties is the material inquiry, and *that* we must gather from the entire instrument, and not fix on any word a particular legal import, irrespective of the connexion it bears to the other words used in the bill of sale. The words sound and healthy, had they stood alone, and not in connexion with the subsequent warranty of title, would have been construed as importing a warranty of soundness, because we should have inferred that such was the intention of the seller, but when they are immediately followed by an express warranty of title, we cannot attach that meaning and intention to them, for we do not believe *the parties* intended to fix that meaning on them, but that they intended, what seems to be the natural and plain import of the whole instrument, that is, to represent the negro as about twenty-five years old and in good health, and that the seller warranted the title.

The ruling of the Circuit Court is in conformity with this view, and the judgment must be affirmed.