(88 South. 592)

CORNELIUS et al. v. BISHOP et al.
(8 Div. 257 and 257A.)

(Supreme Court of Alabama. April 14, 1921.)

1. Mortgages ⬌362—Transferee of mortgagee without authority to bid and purchase on foreclosure sale also without right.

Where a mortgage did not authorize the mortgagee to bid for and purchase the land at foreclosure sale, his transferee did not have such right.

2. Mortgages ⬌369(5)—Mortgagor can affirm or disaffirm within reasonable time purchase on foreclosure by unauthorized mortgagee or transferee.

When a mortgagee or his transferee purchases real estate at his own foreclosure sale under the mortgage without authority therein, the mortgagor has the right to affirm or disaffirm the sale, and, if he disaffirms, to redeem, which must be done within a reasonable time after the sale, two years in ordinary cases.

⬌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

3. Mortgages ⬤⟹369(5)—Time within which successors of mortgagor may disaffirm sale on foreclosure to mortgagee or transferee not authorized to purchase stated.

If the mortgagor is dead when the mortgage is foreclosed and the property purchased at the sale by the mortgagee or his transferee, who are unauthorized, the mortgagor's widow or heirs, 21 years old or over at the time of sale, have, in ordinary cases, 2 years to affirm or disaffirm the sale; if the heirs of the mortgagor or any of them are minors at the time of sale, then, in ordinary cases, they have 2 years after attaining full age to affirm or disaffirm the sale, provided the period is not extended more than 20 years from the date of sale.

4. Mortgages ⬤⟹369(5)—Mortgagor's widow through lapse of time without right to affirm or disaffirm foreclosure sale to mortgagee's transferee; children have such right.

Where the widow of a mortgagor was 21 years old at the time of foreclosure sale, at which the mortgagee's transferee, without authority to do so, purchased, she has no right, more than 2 years after the sale—in fact, nearly 7 years—to affirm or disaffirm it, but the mortgagor's six children, five of whom are still minors, and one of whom is between 21 and 23, have the right to disaffirm and redeem.

5. Mortgages ⬤⟹615—Widow whose right to attack foreclosure sale barred a proper party to bill to redeem.

In suit by the widow of a mortgagor and her six children to redeem from foreclosure at sale under which the mortgagee's transferee purchased the land, though not authorized, the widow, who has remarried, and who has lost her rights through lapse of time to attack the sale, held a proper party under the allegations of the answer and the proof; the answer averring she conveyed her interest to others after the mortgage was foreclosed.

6. Mortgages ⬤⟹595—Mortgagee or transferee, unauthorized purchaser at foreclosure sale, regarded as mortgagee in possession.

When foreclosure sale to the mortgagee, not authorized to purchase, is disaffirmed, then the mortgagee or his transferee, the purchaser at the sale, or his privies, if in possession of the land, are regarded and considered as mortgagees in possession, and are accountable as such to the mortgagor or his heirs; the purchaser or his vendees being regarded as assignees of the mortgage standing in the shoes of the mortgagee.

7. Mortgages ⬤⟹602—Vendees of mortgagee's transferee who purchased on foreclosure without authority chargeable with rents and profits.

Vendees of a mortgagee's transferee who purchased on foreclosure sale without authority, being in possession of the land, are chargeable by the heirs of the mortgagor for rents and profits received, or which, with reasonable diligence, could have been received; but, under Code 1907, § 3850, they are not chargeable with rent for more than a year before commencement of the suit by the heirs of the

mortgagor to redeem from foreclosure, being purchasers in good faith under color of title.

8. Mortgages ⬤⟹603—Vendees of mortgagee's transferee who purchased on foreclosure without authority not entitled to compensation for improvements exceeding rent charged against them.

Vendees of mortgagee's transferee who purchased on foreclosure sale without authority, being in possession, are entitled to compensation for permanent improvements, but not beyond the rents charged against them, and in such case the taxes, repairs, and improvements with which the mortgagor's heirs are chargeable must not exceed the rents and profits received.

9. Mortgages ⬤⟹602—Vendees of mortgagee's transferee who purchased on foreclosure without authority chargeable with rents based on value of land without their improvements.

Vendees of mortgagee's transferee who purchased at foreclosure sale without authority are chargeable with rent estimated, not upon the increased value of the property arising from their improvements, but upon the estate as it was when it came into their hands prior to such improvements.

10. Mortgages ⬤⟹603 — No compensation for improvements made after suit to disaffirm sale on foreclosure to mortgagee's transferee chargeable against rent or income.

No compensation for improvements can be charged against rent or income from land that were made after suit was commenced disaffirming sale and purchase on foreclosure by the mortgagee's transferee, who was not authorized to purchase.

11. Mortgages ⬤⟹600(1)—Minor heirs of mortgagor not chargeable with cash and improvements not contracted for.

Minor heirs of a mortgagor attacking sale on foreclosure whereat the mortgagee's transferee without authority purchased should not be required to account for a mule bought for the family, and cash paid their mother, and for the amount paid for a building voluntarily placed on the land by another, even if the money did arise out of profits on resale of the land after the mortgage was foreclosed; such minors not having contracted for the mule, cash, and improvements, and not being liable for them.

12. Mortgages ⬤⟹615 — Remote grantee of mortgagee's transferee a necessary party to suit to redeem for foreclosure.

In suit by the widow and heirs of a mortgagor to redeem from foreclosure sale, whereat the mortgagee's transferee, unauthorized by the mortgage, purchased, a remote grantee of the mortgagee's transferee is a necessary party.

Appeal from Circuit Court, Marshall County; W. W. Harralson, Judge.

Bill to redeem from foreclosure by M. L. Cornelius (formerly Woodham), on behalf of herself and her minor children, by her husband, Woodham, against Richard Bishop and others. Decree for respondents, and complainants appeal. Reversed and remanded.

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

John A. Lusk & Son, of Guntersville, for appellants.

There was no authority given the mortgagee to purchase at her sale, and complainants had the right to disaffirm and redeem. 88 Ala. 487, 7 South. 238, 16 Am. St. Rep. 55. The purchaser is regarded as the assignee of the mortgage, and is accountable to the mortgagor in all respects as the mortgagee. 187 Ala. 181, 65 South. 364; 17 Colo. 489, 30 Pac. 43, 31 Am. St. Rep. 328. A purchaser under a defective foreclosure, entering into possession, has no more rights than those of an assignee, and the redemption money is to be divided in proportion to money paid by each, and in the order that the purchases were made. Thomas on Mortgages, p. 233; 189 Ala. 153, 66 South. 75, and authority supra. Purchaser is chargeable with notice of every matter affecting the estate which appears on the face of the muniments of title, and whatever he could have learned by inquiry which ought to have been prompted by these recitals. 46 Ala. 664; 39 Cyc. 1711–1714; Thomas on Mortgages, p. 149. A mortgagee coming into possession before a valid foreclosure becomes a trustee for the mortgagor or those holding in privity under him. 106 Ala. 417, 17 South. 623; 114 Ala. 63, 21 South. 483; 46 Ala. 664; 79 Ala. 192; 74 Ala. 232, 49 Am. Rep. 813. The decree should have allowed each of the complainants separately to redeem the land from the mortgage. 65 Ala. 511; 79 Ala. 192; 2 Jones on Mortgages, § 1126. The respondents are not entitled to compensation for improvement. 60 Ala. 360; 79 Ala. 192, and authorities supra. Respondents are not bona fide holders without notice. 46 Ala. 664; 132 Ala. 155, 32 South. 630; 114 Ala. 63, 21 South. 483; 79 Ala. 192.

Street & Bradford, of Guntersville, for appellees.

The mortgage holder was not in fact the purchaser at the sale, and the defendants are bona fide purchasers. 80 Ala. 403; 74 Ala. 232; 22 Cyc. 17–20; 2 Jones on Mortgages, § 1886. The respondents were entitled to taxes and reasonably necessary repairs. 132 Ala. 155, 32 South. 630; 59 Ala. 535. Having acted in good faith, they were entitled to set off the value of the improvements against their liability. 22 Cyc. 561; 27 Cyc. 1266; 16 Cyc. 143; 74 Ala. 232; 65 Ala. 511; 92 Ala. 463, 8 South. 417, 12 L. R. A. 136; 88 Ala. 346, 6 South. 698. In estimating the rent, rule is their value in the condition of the land when the mortgagee went into possession. 132 Ala. 155, 32 South. 630; 79 Ala. 192; 74 Ala. 232; 65 Ala. 511. If the improvement exceeds the rent, it must be paid for before redemption, under the facts in this case. 29 Ala. 478; 39 Ill. 521, 89 Am. Dec. 322; 48 Neb. 646, 67 N. W. 452, 58 Am. St. Rep. 714, and authorities supra. The adult as well as the minor complainants are required to account for the money expended by Mrs. Buccalew in exonerating the farm occupied by them, by paying their father's debts. 130 Ala. 502, 30 South. 517; 87 Ala. 584, 6 South. 197; 73 Ala. 116; 64 Ala. 420, 38 Am. Rep. 13, 99 Ala. 36, 11 South. 419; 12 South. 605; 99 Ala. 52, 11 South. 830; 122 Ala. 602, 26 South. 139, 82 Am. St. Rep. 103; 169 Ala. 648, 53 South. 830. Infants can no more obtain equity without doing equity than adults. 193 Ala. 364, 69 South. 574; 19 Ill. 295, 68 Am. Dec. 597.

MILLER, J. On the 13th day of September, 1905, G. W. Woodham and his wife executed a mortgage to Mary P. Harwell on 85 acres of land to secure debt of $600, evidenced by three promissory notes for $200 each. This mortgage contained a power of sale, but did not authorize the mortgagee, her transferee or assignee, to purchase the property at the sale. The mortgage was duly recorded in the probate office of Marshall county, the county in which the land was located, on the 14th day of September, 1905.

On November 17, 1908, the mortgagee transferred the debt and mortgage to L. V. Buckalew; and on the 30th day of October, 1909, under the power of sale in the mortgage, L. V. Buckalew, the transferee, sold the land, and she was the purchaser at the sale, and deed was made conveying the land to her by her agent and attorney on October 30, 1909. It was bid in by her for $441, "the amount due on said mortgage indebtedness, including the cost of foreclosure."

On October 20, 1907, before the mortgage was foreclosed, G. W. Woodham, the mortgagor, died. He left a widow and six minor children. The widow married again— a Mr. Cornelius.

There has been no administration on G. W. Woodham's estate. After the mortgage foreclosure sale, L. V. Buckalew, the purchaser, and her husband, sold and conveyed the land—part of it, 42 acres, to Richard Bishop, and the balance, about 42 acres, to S. J. Stone.

The widow, Mrs. M. L. Cornelius, and these six children of G. W. Woodham, the mortgagor, file this bill, allege the foregoing facts, and elect to declare null and void the purchase of L. V. Buckalew, the transferee of the mortgage, at the foreclosure sale, because it gave her no right to become the purchaser, and that they be allowed to redeem the lands from the mortgage by paying all amounts justly due thereunder, and those in possession be required to account for all rents and profits received from the land. The bill was filed March 23, 1917. The bill makes parties defendant the following named persons: Mary P. Plemons, who was Mary P. Harwell, the original mortgagee; Mrs. L. V. Buckalew, who was the transferee of the mortgage; Richard Bishop and

Virgil Moon, those now in possession of certain parts of the land; and Richard Bishop is in possession of 42 acres under purchase from L. V. Buckalew. There were decrees pro confesso against Mary P. Plemons and Mary P. Harwell.

Richard Bishop and Virgil Moon file demurrers and answers to the bill. Defendants in their answer aver:

"That at the death of G. W. Woodham he owned two farms, one being the land involved in this suit, and another farm lying near by this farm; that the farm in controversy was incumbered by the mortgage mentioned in the bill, and the other farm was free from incumbrance, and that at that time the said G. W. Woodham was indebted to various persons to the amount of several hundred dollars in addition to the indebtedness covered by said mortgage; that in the early fall of 1909 complainant M. L. Cornelius (then Woodham), the said L. V. Buckalew, W. L. Buckalew, who is a brother of the said M. L. Cornelius, one Mrs. S. J. Stone, and the defendant R. E. Bishop entered into an agreement in substance that the land involved in this suit should be sold under the power contained in the mortgage in order to clear up the land title, and that the said L. V. Buckalew should purchase the land, and that she should then convey to the said S. J. Stone the land described in paragraph 6 of the answer in consideration of $600 to be paid by Mrs. Stone, and that she, the said L. V. Buckalew, should then convey to the defendant Bishop the land described in paragraph 5 of the bill in consideration of $400 to be paid by said Bishop.

"It was further agreed that out of the $1,000 to be paid by the said Stone and Bishop the balance due on the mortgage should be paid, and the remainder to be paid to the creditors of the said G. W. Woodham so as to relieve the other farm from liability for debts of said Woodham, on which complainants were residing at the time of making said agreement. Respondent avers that after advertisement in strict conformity to the power of sale in said mortgage and in all other respects in conformity thereto, the said L. V. Buckalew, as the assignee of said mortgage, did on the 30th day of October, 1909, sell said land under said power at public outcry at the courthouse door of Marshall county, and at such sale said L. V. Buckalew did bid in the same at $441, and her attorney did execute to her the paper, a copy of which is attached to the bill."

R. E. Bishop on the 1st day of November, 1909, purchased a part of the land—42 acres, accurately describing it—from L. V. Buckalew, and paid her $400 therefor. A proper deed was made conveying said land to him. He bought it in good faith, with no knowledge or notice of any defects in the title of L. V. Buckalew. He went into possession, has been in possession ever since, and has made large improvements on the land at great expense, to wit, $1,000.

The respondent Virgil Moon makes same averments as above set out by Bishop in regard to the balance of said land, 42 acres, except he avers that S. J. Stone purchased it from L. V. Buckalew and paid her $600 for it, and proper deed was made to him. After the purchase of the land S. J. Stone went into possession and continued in possession until the 8th of November, 1910, when he (Stone) conveyed and sold this land to James Chapell for $600. The answer avers that neither Stone nor Chapell knew of or had any notice of defects in title of L. V. Buckalew. These two defendants also aver in their answer that complainants during these years resided near said lands, and knew that respondents or those through whom they hold were claiming openly and adversely the lands as their own, in hostility to all other persons, and putting valuable improvements thereon; and they further aver that "the money received by said L. V. Buckalew for sale of the said lands to said R. E. Bishop and the said S. J. Stone, as above set forth," amount in all to the sum of $1,000; that, after paying said mortgage debt, the balance of the money was paid out by L. V. Buckalew in pursuance to said agreement as follows:

"On the debts of said G. W. Woodham in a large amount, to wit, $300, and did out of said remaining funds realized from the sale of said lands expend a large amount, to wit, $300, in erecting a dwelling house on said other farm which complainants still own and occupy and enjoy as a home or a dwelling place, thereby both improving said other farm and relieving it from liability for the debts of G. W. Woodham."

[1-3] This mortgage did not authorize the mortgagee to bid and purchase the land at the sale. The transferee of the mortgage would not have that right. When a mortgagee or his transferee purchases real estate at his own sale under the mortgage without authority therein, the mortgagor has the right to affirm or disaffirm the sale, and, if he disaffirms, to redeem. This must be done within a reasonable time after the sale, and "in ordinary cases" that is 2 years. If the mortgagor is dead when it is foreclosed, then his widow or heirs 21 years old or over at the time of sale have "in ordinary cases" 2 years to affirm or disaffirm the sale. If the heirs of the mortgagor or any of them are minors at the time of sale, then they "in ordinary cases" have 2 years after attaining full age to affirm or disaffirm the sale, provided the period is not extended more than 20 years from the day of sale. Lovelace v. Hutchinson, 106 Ala. 418, 17 South. 623; Alexander v. Hill, 88 Ala. 487, 7 South. 238, 16 Am. St. Rep. 55; Garland v. Watson, 74 Ala. 323; Sharp v. Blanton, 194 Ala. 460, 69 South. 889.

[4, 5] The mortgagor died before the mortgage was foreclosed. He left a widow and six minor children. Five of the children are still minors and sue by next friend, and one was between 21 and 23 years of age when

the bill was filed. The widow, formerly M. L. Woodham, now M. L. Cornelius, was 21 years old at the time of foreclosure sale. The bill was filed more than 2 years—nearly 7 years—thereafter. She has no right now to affirm or disaffirm the sale. The six children have the right to disaffirm and redeem. Alexander v. Hill, 88 Ala. 487, 7 South. 238, 16 Am. St. Rep. 55. Still she (widow) is a proper party under the allegations of the answer of the respondents and the proof in the cause. They aver she conveyed her interest in these 85 acres of land to Richard Bishop, defendant, and said S. J. Stone after the mortgage was foreclosed.

The evidence shows that she, the widow, after the mortgage was foreclosed, joined in two deeds with said L. V. Buckalew and said W. L. Buckalew. One deed sold and conveyed 42 acres of the land to Richard Bishop, and the other deed sold and conveyed the other 42 acres of land to S. J. Stone. These respondents claim the widow's interest in the 85 acres and her interest in the rents under the deed. Richard Bishop and S. J. Stone were each strangers to this land—no interest in any of it until the execution of the deed.

The answers of the defendants aver and the proof shows that this 85 acres of land was used and occupied by the mortgagor, G. W. Woodham, and his family as a homestead at the time of his death. He was a citizen of Alabama. There was no administration on the estate. This 85 acres of land was never allotted to the widow and minor children as a homestead by any court. There is no evidence as to whether his estate is solvent or insolvent. There is no evidence as to whether all of his real estate at his death would exceed in area 160 acres or in value $2,000, or whether all of his personal property was more or less in value than $1,000. It may be that all of his property, real and personal, at his death, was less than what is allowed the widow and six minors as exempt.

Richard Bishop and S. J. Stone were strangers to this 85 acres of land until the deeds by the widow and others jointly were executed to them; and under the foregoing facts they or the vendee of either cannot claim her (the widow's) aliquot interest in the rents or in this 85 acres against these minor heirs of G. W. Woodham, deceased, the complainants in this cause. The 85-acre homestead conveyed had never been allotted to the widow and minors. Section 4196, Code 1907, reads in part:

"Such homestead may be retained by the widow or minor child or children until it is ascertained whether the estate is solvent or insolvent; if it is insolvent, "it shall vest in them absolutely," and "shall not be sold * * * by order of any court until death of widow and youngest child is of age, except by order of the chancery court for reinvestment with consent of the widow in writing, if living."

She sold it, or attempted to sell it, by those deeds. She moved off of it. Strangers, these respondents, Bishop and Moon, have no right to the homestead as against the minor heirs from the widow's conveyance. The minor heirs have the right to use and occupy the homestead, at least during their minority, free of rent from strangers, the said respondents. To give strangers the right to use and occupy it with them, under the widow's conveyance or deed, or to collect from them thereby an aliquot part of the rent, would be in effect to destroy the homestead rights of the minors in part at least, of which rights they cannot be deprived during their minority. Sections 4228, 4224, 4225, 4227, 4196, Code of 1907; Norton v. Norton, 94 Ala. 481, 10 South. 436.

The evidence shows that James Chapell and Prudie Chapell, his wife, sold and conveyed the 42 acres of land (purchased by S. J. Stone) to F. B. Moon and V. C. Moon on November 26, 1915. V. C. Moon is a party defendant. F. B. Moon is not a party to this suit. He should be. He is jointly interested with Virgil Moon.

The administrator is not a necessary party to a bill of this kind to disaffirm and redeem. The title is in the heirs, and not the administrator. Stovall v. Clay, 108 Ala. 105, 20 South. 387; Mayer, Adm'r, v. Kornegay, 163 Ala. 371, 50 South. 880, 136 Am. St. Rep. 79.

The defendants, answering, claim to be bona fide purchasers of the land with no knowledge or notice of any defect in the title of said L. V. Buckalew. The mortgage is dated September 13, 1905, and was recorded September 14, 1905, in the probate office of Marshall county, Ala., the county in which the land is located. It shows on its face that when foreclosed the mortgagee had no authority to purchase the land. The foreclosure deed of the agent and attorney of L. V. Buckalew shows on its face that L. V. Buckalew was transferee of the mortgage, and that she purchased the land at the foreclosure sale for the amount of the mortgage debt secured thereby, viz. $441. The bill avers that defendants and any and all persons claiming through or under L. V. Buckalew had knowledge, actual or constructive, of her want of power to purchase the land, and the rights of complainants to have the sale set aside. The records of the mortgage and of the foreclosure deed are constructive notice of the contents of each to all persons claiming title to the land through them. Dudley v. Witter, 46 Ala. 664; Fountain v. Pateman, 189 Ala. 153, 66 South. 75; section 3373, Code 1907.

[6] When the foreclosure sale is disaffirmed, then the mortgagee or his transferee, the purchaser at the sale, or his privies, the answering defendants in this case, if in possession of the land, are regarded and considered in law as mortgagees in possession, and are

accountable as such to the mortgagor or his heirs. The purchaser or his vendees are regarded as assignees of the mortgage. The vendees, the answering defendants, are assignees of the mortgage, and "stand in the shoes of the mortgagee." Lovelace v. Hutchinson, 106 Ala. 417, 17 South. 623; Dozier v. Farrior, 187 Ala. 181, 65 South. 364. The answering defendants and F. B. Moon, vendees of the mortgagee, in possession of the land, own the balance due on the mortgage debt. The complainants, the six children of the mortgagor, in order to redeem, must pay the balance due on the mortgage with interest at 8 per cent. per annum.

[7] The defendants, being vendees of the mortgagee and in possession of the land, are each "chargeable to complainants for the rents and profits received or which could with reasonable diligence have been received."

[8-10] The defendants purchased this land, paid valuable consideration for it, received deed to it, and went into possession of it. They purchased it from one who had bought it at a mortgage sale without authority in the mortgage to do so, and from the widow of the mortgagor. They knew in law that the sale could be disaffirmed and set aside; yet in Dozier v. Mitchell, 65 Ala. 511, this court held that under those circumstances the defendant "was in possession under color of title, in good faith, and is not responsible for damages or rent for more than one year before the commencement of suit." The defendants are 'not chargeable with rent for more than one year before the commencement of the suit. * * * Being purchasers in possession in good faith under color of title, they are entitled to compensation for permanent improvements made, but not beyond, the rents charged against him [them]." The defendants are liable to complainants for rents and profits received or which could have been received with reasonable diligence from one year before commencement of suit, less taxes paid on the property for one year before suit filed, and less reasonable and necessary repairs made during that time, and less improvements made before commencement of suit on the land; but the taxes, repairs, and improvements charged must not exceed the rents and profits received; if they do, the excess over rents and income by reason of improvements cannot be taken into account on the reference or settlement and charged to complainants in this cause. "In estimating the rents they are not to be charged upon the increased value of the property arising from improvements, but upon the estate as it was when it came into the hands of the mortgagees prior to such improvements." No compensation for improvements can be charged against rent or income from the land that were made after the suit was commenced disaffirming the sale and purchase under the mortgage. Dozier v. Mitchell, 65 Ala. 511; section 3850, Code 1907; Gordon v. Tweedy, 74 Ala. 232, 49 Am. Rep. 813; Lovelace v. Hutchinson, 106 Ala. 417, 17 South. 623; Dozier v. Farrior, 187 Ala. 181, 65 South. 364.

[11] The defendants claim that in order to redeem the complainants should pay also the amounts shown by the register's report to have been paid out of proceeds of profits arising from sale of the land to Bishop and Stone. There was reference before the register. He reported what W. L. Buckalew did with the $1,000 received from Bishop and Stone for the land after paying the mortgage debt of $441 to his wife, L. V. Buckalew. The report of the register states:

"I find that out of the proceeds rising from the attempted or alleged foreclosure or sale of lands in question there was paid by W. L. Buckalew as follows:

| | |
|---|---:|
| In money to Mrs. M. L. Woodham, now Cornelius | $125 00 |
| For building on another place upon which the said M. L. Woodham, now Cornelius, and her family reside and owned by G. W. Woodham at the time of his death | 275 00 |
| For a mule bought for the family | 125 00 |
| | $525 00" |

There were no objections or exceptions by either party to the report of the register. It was confirmed by the court.

These minors, at the time of the mortgage sale and the alleged agreement between W. L. Buckalew and wife, S. J. Stone, Richard Bishop, and their mother, Mrs. Woodham, in regard to the land, were all under 14 years of age. They had no guardian. Their ages then ranged from 2 to 14 years. These minors made no contract with any of these parties. Richard Bishop and S. J. Stone did not purchase at the mortgage sale—they purchased the land afterwards. The land at the mortgage sale was purchased by the transferee, L. V. Buckalew, for $441, the amount of the mortgage debt and costs of sale, and not for $1,000, the amount received when afterwards sold and conveyed by her, and her husband and Mrs. Woodham, the widow, to Richard Bishop and S. J. Stone. These complainants, nearly all minors now, should not be required to account for a mule bought for the family, valued at $125, and $125 cash paid their mother, and for $275 paid for a building by W. L. Buckalew voluntarily placed on their land by him, even if the money did arise out of profits in resale of this land after the mortgage was foreclosed. Their property cannot be made liable for money expended by another in voluntarily erecting a building on it, or for cash paid their mother for the family. These minors made no contract for the cash, the mule, or the improvements on the land. They are not liable for them. The building or improvements on their land was placed

there voluntarily by another. They are not responsible for their mother's contract. She is responsible. The minors are not responsible for the consideration paid to their mother by Richard Bishop or S. J. Stone when she signed the deed to the homestead to them. That was her contract. It was not their contract. They are entitled to redeem the homestead, the 85 acres of land, described in the bill of complaint. She is not. Dozier v. Mitchell, 65 Ala. 511; Alexander v. Hill, 88 Ala. 487, 7 South. 238, 16 Am. St. Rep. 55; Lovelace v. Hutchinson, 106 Ala. 418, 17 South. 623.

[12] F. B. Moon is a necessary party. He is not before the court. So a decree fixing the amount to be paid to redeem cannot be rendered here under the foregoing principles of law.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and THOMAS, JJ., concur.